EXHIBIT A

**UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**DALLAS FIELD OFFICE - HEARINGS UNIT**
**207 S. Houston Street - 3rd Floor**
**DALLAS, TEXAS 75202**
**(214) 655-3347; (Fax) 655-3340**

| | | |
|---|---|---|
| **Treslyn (nee Chambliss) Patterson** | ) | |
| **300 S. Waterford Oaks Dr.** | ) | |
| **Cedar Hill, TX 75104** | ) | |
| | ) | |
| **Complainant** | ) | **EEOC Hearing No.:** |
| | ) | **310-2003-5105X** |
| **v.** | ) | |
| | ) | **Agency Case No.:** |
| **Roderick R. Paige,** | ) | **ED-2002-14-00** |
| **Secretary,** | ) | **[02-051-IDR]** |
| **United States Department of Education** | ) | |
| **400 Maryland Avenue, SW** | ) | **Before:** |
| **Washington, D.C. 20202-2110** | ) | **David H. Rosenberg, AJ** |

Counsel for Complainant: W. Pruitt Ashworth, Esquire
Counsel for Agency: Robert Fabia, Esquire

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is made by and on behalf of the United States Department of Education (Agency) and its employee, Treslyn Patterson (Complainant), as represented by Robert Fabia, Esq., and W. Pruitt Ashworth, Esq., respectively. This Agreement is entered into in full and final settlement and satisfaction of any and all claims and under Title VII of the Civil Rights Act and Rehabilitation Act arising out of the above-captioned matter. This settlement is a full release of all claims the Complainant may have against the Agency for the time period up to and including the date on which this settlement is entered.

As required by the Commission's guidance on settlement agreements, the identifiable issues resolved by this agreement are as follows. Complainant, an Office for Civil Rights (OCR), Dallas, GS-360-11 Equal Opportunity Specialist, made two claims or allegations in this complaint before the EEOC: Denial of a career-ladder promotion to the GS-11[1] and harassment. Complainant asserts that her immediate supervisor, Timothy Blanchard (Caucasian), delayed her career ladder promotion from a GS-360-9/3 to GS-11/1 due to discrimination based on race (African-American), sex (female), mental disability (anxiety and depression), physical disability (temporary shoulder injury, hypertension, insomnia, and gastritis), and reprisal (prior EEO activity).

Another component of her case was the claim of a hostile work environment based on a series of harassing incidents or events (e.g., denial of leave, heightened scrutiny of medical evidence to support leave requests, etc.). The Complainant made a claim, among other things, for back pay, retroactive promotion to the grade 11, reassignment to a different team leader, relocation of her assigned office space so as not to be in near her current immediate supervisor, compensatory damages, and attorney's fees.

This Agreement is entered into in full and final settlement and satisfaction of any and all claims and demands that the Complainant now has against the Agency and its current and former officers, employees, and agents, on account of incidents or circumstances of her employment arising prior to the date

[1] Complainant received her career-ladder promotion on January 26, 2003; therefore, the allegation is best characterized as a "delayed" or "untimely" career ladder promotion claim.

of this Agreement, including but not limited to the incidents raised and related to her above-captioned complaint to the Equal Employment Opportunity Commission (EEOC).

In consideration of the mutual understandings stated below, and of the promises made and the acts to be performed by the parties, it is agreed that:

1. The Agency agrees to do the following:

   a. In accordance with authorizing provisions under Title VII and the Rehabilitation Act, to pay to the Complainant's attorney a lump sum payment of forty thousand dollars ($ 40,000), on behalf of both the Complainant and her attorney, no later than thirty (30) calendar days after the last required signature is affixed to this agreement. It is understood that the Complainant and her attorney are responsible for the payment of any tax liabilities arising from the payment of the lump sum to them jointly.

   b. To reassign the Complainant from her present team, led by Timothy Blanchard, to the team led by Johnny Stephens. This reassignment will remain in effect for the duration of the Complainant's employment with the OCR Dallas Office and as long as Mr. Stephens is a team leader. This reassignment will take place no later than two pay periods after the last required signature is affixed to this agreement so that Complainant and management can provide for the orderly transition of work or closure of cases assigned to her. All standard operating procedures will apply as to when and how the Complainant will be eligible and considered for her advancement to her next career ladder promotion to the grade 12.

   c. To permit the Complainant to relocate her assigned office space (cubicle) so as not to be in the same proximate area as her current immediate supervisor, but doing so within the limits and constraints imposed upon the parties by the terms of the local labor-management agreement in effect for the OCR Dallas facility, and subject to modification in the future as may be required by needs of the office.

2. The Complainant agrees:

   a. That, by affixing her signature on this agreement, she withdraws, with prejudice, her above-captioned EEOC complaint and all attending matters;

   b. That, by entering into this Agreement and withdrawing her above-captioned complaint, she waives, abandons, releases, and discharges the Agency, and its current and former officers, agents, and employees in their official and individual capacities from each, any, and all claims and/or causes of action whatsoever, that she now has or may hereafter acquire, on account of incidents or circumstances arising before the date of this Agreement, from or out of the facts alleged relative to the matters resolved herein;

   c. That all discovery materials (documents and items of any kind) are to be returned to the Agency (specifically, the Office of the General Counsel) within five calendar days after the last signature is affixed on this agreement;

   d. That all copies made of any discovery materials provided by the Agency be returned or destroyed within five calendar days after the last signature is affixed on this agreement;

   e. That any notes or impressions and copies of (including electronic files stored on or for a computer) made from those acquired documents be destroyed or returned within five calendar days after the last signature is affixed on this agreement; and

   f. To keep confidential (1) all terms of this agreement and (2) all materials, information, and documents produced in discovery including those documents and materials produced from the files of Mr. Mark Levesque, herein defined as the "Levesque" materials. This confidentiality agreement means that Complainant shall not disclose or refer to the existence of the "Levesque" materials, shall not refer to the "Levesque" materials as a basis or reason for settlement or as an issue in the case, shall not disclose the terms of this Agreement related to the "Levesque" materials, and shall not disseminate, including oral discussion, the "Levesque" materials or any information derived from the "Levesque" materials. However, disclosure is permissible to others who have a "need to know" basis status (for example, personnel needed to execute certain terms of the agreement, the IRS, etc.) or to simply indicate that the disputed matter was settled and that the terms of the agreement are confidential and not subject to disclosure to unauthorized personnel.

3. The Complainant and the Agency jointly and expressly stipulate and agree that their entering into this Agreement does not constitute, and shall not be construed as, any admission by the Agency of: (a) liability, fault, or wrongdoing; and/or (b) any factual allegation of Complainant in connection with the matters resolved herein; and/or (c) any violation of any law, regulation or constitutional right. The conditions specified in this Agreement are contractual in nature and not mere recitations, and reflect a compromise settlement of disputed claims.

4. This Agreement shall not serve as a precedent for resolving any other complaint or claim that has been or may be filed by the Complainant or any other person.

5. The parties acknowledge that they sign this Agreement voluntarily and with full knowledge of its terms and conditions; that it is their entire understanding with respect to the matters resolved herein; that no representations or inducements to resolve these matters have been made, other than those recited herein; and that no statements other than those contained in this Agreement are binding upon the parties with respect to the matters it resolves.

6. The parties agree that the terms found within the Commission's regulation, 29 C.F.R. § 1614.504 (Compliance with settlement agreements and final action), will govern as to the processing of a claim of an alleged breach of the agreement committed by the Agency.

7. If the Complainant or her representative breach the terms of this agreement (e.g., by disclosing terms of this agreement to any unauthorized person or by causing directly or indirectly the unauthorized dissemination of information or items related to the Levesque discovery materials), this will cause the Complainant to relinquish all or part of the monetary payment given to her side in settlement of this case.

    a. When a disclosure is related to the Levesque materials, the Complainant agrees to forfeit her right to the lump sum payment of $ 40,000, which was provided to the Complainant and her attorney in settlement of this case. In the event that an unauthorized disclosure is related only to the terms of this agreement, then the Complainant agrees to forfeit the sum of $ 10,000 for each unauthorized disclosure. The total maximum amount of the repayment to be collected from the Complainant for said unauthorized disclosures or breaches shall not exceed the sum of $ 40,000 and shall be paid back to the agency no later than 60 calendar days after the Agency's determination that the Complainant's side breached the agreement.

b. After making the determination that the Complainant's side possibly has breached the agreement, the Agency will inform the Complainant or her attorney of this concern in writing.

c. The Complainant will have three (3) workdays from the date of receipt of the Agency's notice of a claimed breach to respond to this notice. If, after considering the Complainant's response to the claimed breach of agreement, the Agency will duly notify the Complainant in writing of this determination and the Agency's demand that she relinquish monies advanced under the agreement (i.e., partial or full repayment of funds received).

d. If due to financial hardship payment cannot be made in full within the allotted 60 calendar days after notification of the determination of a breach, then repayment will be accomplished through the Department's offset salary payment regulatory process. See 34 CFR Parts 31 and 32.

e. If the Complainant challenges the Agency's determination: (i) that a breach has occurred; (ii) that the proposed reimbursement amount is excessive; or (iii) that a technical breach was not able to be cured, then she must file in writing such an assertion and present it to the EEO Director, pursuant to 29 C.F.R. § 1614.504, and its applicable provisions will then apply for further processing of a breach dispute.

8. This Agreement, in the case of Patterson v. Paige, EEOC Case No. 310-2003-5105X [ED-2002-14-00], will become effective on the date of the last signature hereto.

FOR THE COMPLAINANT:

Date: Sept 3, 2003

TRESLYN J. PATTERSON

Date: Sept. 3, 2003

W. PRUITT ASHWORTH, ESQUIRE
COMPLAINANT'S REPRESENTATIVE

FOR THE AGENCY, THE U.S. DEPARTMENT OF EDUCATION:

Date: September 8, 2003

GERALD A. REYNOLDS
ASSISTANT SECRETARY
OFFICE FOR CIVIL RIGHTS

Date: 9-9-03

WILLIAM J. LEIDINGER
ASSISTANT SECRETARY
OFFICE OF MANAGEMENT

Date: Sept. 2, 2003

ROBERT FABIA, ESQUIRE
AGENCY REPRESENTATIVE