# In the United States Court of Federal Claims

No. 08-06C
Filed: September 16, 2011

\*   \*   \*   \*   \*   \*   \*

TRESLYN C. PATTERSON,    \*

     Plaintiff,    \*      Title VII; Settlement
         Agreement; Substantive Right
     v.    \*      to Money Damages; EEO
         Office; Department of Education;
UNITED STATES OF AMERICA,    \*      EEOC Authority to Award
         Damages; Default Remedy for
     Defendant.    \*      Contract Breach

\*   \*   \*   \*   \*   \*   \*

*W. Pruitt Ashworth*, Burleson, Pate & Gibson, Dallas, Texas, for plaintiff.

*Kenneth S. Kessler*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for defendant.

## OPINION AND ORDER

**Hodges**, Judge.

This is a breach of contract case. Ms. Treslyn Patterson has a settlement agreement with the United States Department of Education, arising from an earlier dispute regarding her employment. The agreement includes damages and a requirement that the Department adhere to standard operating procedures in considering plaintiff for her next promotion. Ms. Patterson alleges that defendant violated the settlement agreement by delaying her promotion when it was due.

We tried the case earlier this year.  Plaintiff could not meet her burden of proving a contract breach that caused her money damages. For example, Ms. Patterson alleged, but could not prove that her supervisors abused their discretion as managers or acted outside their authority in their dealings with her. She alleged, but did not show, that any violations of procedure by the Government related to the timing of her promotion.  She did not show that alleged violations of procedure supported damages for breach. Plaintiff's Complaint must be dismissed.

## BACKGROUND

Ms. Patterson works for the Dallas office of the Department of Education as an Equal Opportunity Specialist.  She filed a Title VII action in April 2002, alleging workplace discrimination based on race, sex, mental disability, physical disability, and reprisal. *See* 42 U.S.C. § 2000e - e-17 (2000).

The Department paid Ms. Patterson a cash award to settle the case.  The parties memorialized the settlement by an agreement that included defendant's pledge that it would follow the Department's standard operating procedures in considering plaintiff's next promotion: "All standard operating procedures will apply to when and how the complainant will be eligible and considered for advancement to her next career ladder promotion to grade 12."  Also, an alleged breach by the Department could be resolved by the administrative appeal procedure of the Equal Employment Opportunity Commission.  *See* 29 C.F.R. § 1614.504.

The phrase "standard operating procedures" is not original to the settlement  agreement, but is derived from the Department of Education Personnel Manual Instructions, or PMI, and plaintiff's Collective Bargaining Agreement.[1]  Ms. Patterson is covered by the CBA as a bargaining-unit employee.

The Collective Bargaining Agreement contains detailed standards for promotion of employees covered by the CBA.  These include minimum time-in-grade requirements, for example, and a requirement that the employee obtain a supervisor's certification that he or she is performing successfully at the employee's current level.  The latter requirement was described as "performing at a successful level."  Plaintiff testified that a memorandum provided by her supervisor at the time, Mr. Blanchard, explained the meaning of "performing at a successful level" for his purposes.  The memo stated that an employee should "complete two or more different complex cases" to demonstrate her ability to perform sufficiently to qualify for promotion.

Once an employee covered by the Collective Bargaining Agreement were qualified for a promotion by  time-in-grade, she could request a determination from her supervisor that she would or would not be promoted.  Plaintiff testified that she met the time-in-grade requirement for promotion in January 2004.  She completed two complex cases in August 2004.  Plaintiff considered herself qualified for promotion in August, and she sought a decision from her supervisor then.  Apparently, she did not receive a response.

Ms. Patterson inquired about her promotion again a month later, and yet again in November 2004.  Plaintiff argued at trial that she should have been promoted as of September

---

[1]These documents, the PMI and the CBA, are set forth in the record of trial.  Additional documents that qualify as standard operating procedures are the position description for the GS-12 level and the Education Department Performance Appraisal System standards.  The Department standards lay out criteria and responsibilities for each grade level.

29, 2004, thirty days after her initial inquiry.  On November 19, 2004, Mr. Stephens certified Ms. Patterson as qualified for promotion.  At first, the promotion was not approved by the regional director; he had been present for plaintiff's presentation of the second complex case, and he questioned the level of independent work that Ms. Patterson had completed. Plaintiff alleged that the regional director's rationale for denying her promotion  was pretextual.

Plaintiff filed a second complaint with the Equal Employment Office of the Department of Education in February 2005, alleging that the delay in her promotion breached the settlement agreement.  The Equal Employment Office initially agreed that the Department of Education had breached the settlement agreement.  Later, that Office rescinded the decision favorable to Ms. Patterson on the grounds that it did not have authority to award money damages.

Ms. Patterson was promoted to Grade 12 in March 2005.  According to her, this was approximately five months after the promotion should have occurred.

Ms. Patterson appealed the EEO's rescission of its favorable decision to the Equal Employment Opportunity Commission in July 2005.  The EEOC denied her appeal in March 2006 and her motion to reconsider in June 2006.  The bases for these rulings were that plaintiff had not shown she was qualified for the grade increase.  The Commission advised Ms. Patterson to sue in federal district court if she wanted to pursue the matter.

Plaintiff filed a Complaint in the Northern District of Texas in August 2006. The district court dismissed her claim for lack of subject matter jurisdiction, noting that the Court of Federal Claims was the only forum with jurisdiction to hear plaintiff's claim for breach of a settlement agreement.  The Fifth Circuit affirmed.  *Patterson v. Spellings*, 249 F. App'x 993 (5th Cir. 2007).  The appeals court found that plaintiff had alleged only a breach of contract, and therefore she had to bring suit in the Court of Federal Claims. [2]

Ms. Patterson sued in this court for breach of her settlement agreement in January 2008. The Government asserted in April 2008 that (1) her Complaint did not state a claim because the settlement agreement does not contemplate monetary damages for its breach; and (2) the contract mandates an administrative dispute process, thereby foreclosing judicial remedies.

We denied defendant's motion to dismiss, stating that a contract need not be shown to be "money-mandating"; money damages are presumed to be the remedy for breach.  The settlement agreement did not limit plaintiff's remedy to an administrative claim, but only described the administrative process in case she chose that route in lieu of litigation.  *See Patterson v. United States*, No. 08-06C (Fed. Cl. Nov. 5, 2008) (order denying motion to dismiss).

The Government raised a similar argument in June 2009, contending that the administrative dispute process outlined in the collective bargaining agreement is the exclusive method for seeking redress for plaintiff's claims.  We affirmed the earlier jurisdictional ruling in

---

[2] That is, plaintiff had not included a Title VII claim.  *See Patterson*, 249 F. App'x 993.

March 2010, stating that the settlement agreement offered Ms. Patterson two avenues for proceeding with her claim, and neither avenue was exclusive.  Ms. Patterson's settlement agreement required the Department of Education to comply with guidelines set out in the collective bargaining agreement, but her settlement agreement was independent of the CBA.  *See Patterson*, No. 09-06C (Fed. Cl. Mar. 23, 2010) (order denying motion to dismiss) (noting that plaintiff's right to insist that the Government abide by the terms of its contract exists separately and independently of the CBA).

The parties proceeded with discovery, and two days of trial began in Dallas on April 5, 2011. Presentation of testimony and other evidence ran beyond schedule, and the parties asked that closing arguments be held at a later date.  Soon thereafter, plaintiff's attorney unexpectedly filed a "letter brief" with the court.  Counsel explained that the brief's purpose was to highlight each of the Government's violations of standard operating procedures.  The letter brief contained factual assertions and other arguments that plaintiff did not raise at trial, and in some instances that were not mentioned by any witness.  For the most part, plaintiff did not cite the transcript as support for her assertions.[3]

Defendant's response to plaintiff's filing the letter brief was to advise the court not to consider the document because the trial was over and all evidence had been received.  The parties made closing arguments on June 1.

## ARGUMENTS

Ms. Patterson believes that she should have been promoted after her September inquiry to her supervisor about the status of her promotion, and that the supervisor's failure to respond was a violation of the standard operating procedures that defendant agreed to follow in her case. Defendant asserted that the CBA rule does not require a response where the supervisor plans to recommend promotion.  If the supervisor plans to recommend the promotion, the rule states only that the supervisor must initiate a written certification, according to the Government.

The Government emphasized the discretionary nature of a decision on promotion by supervisory officials.  In plaintiff's case, a supervisory official to whom Mr. Stephens reported, the Regional Director, did not count one of plaintiff's cases to her credit for purposes of promotion.  The case was Wichita Falls, and it was the topic of substantial testimony during trial. The Regional Director happened to have attended the presentation of that case, and he thought that plaintiff's participation was insufficient to qualify her as having worked independently on a complex case.  The Government notes that the decision was based on the regional director's first-hand knowledge of plaintiff's contribution to the project, and was well within his supervisory authority.  Ms. Patterson was promoted to Grade 12 in March 2005, about five months after the promotion should have occurred, she believes.

---

[3] Plaintiff's attorney reported that his client could not afford the transcript of trial, and that he had attempted to rely on his notes.

**DISCUSSION**

This court has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States … not sounding in tort." 28 U.S.C. § 1491(a)(1).

The Government argued that we lack jurisdiction because the collective bargaining agreement referred to in plaintiff's settlement agreement provides procedures for presenting complaints such as the one plaintiff raises. This court's Tucker Act jurisdiction is preempted where a comprehensive statutory scheme provides review in another forum, defendant argued; an alternate method of review for plaintiff's complaint is found in her collective bargaining agreement.

Plaintiff had the choice of pursuing judicial review according to § 1614 procedures or using the negotiated grievance procedure. *See* 29 C.F.R. § 1614.301. The only limitation was that Ms. Patterson was required to stay the course once she had chosen her approach; she could not later pursue administrative relief if she became unsatisfied with the § 1614 process. *See Patterson*, No. 08-06C (Fed. Cl. May 3, 2010) ("She can raise the matter according to section 1614 procedures or use the negotiated grievance procedure; but having made her choice of forum, the employee must continue that process throughout.")  We have jurisdiction to review this breach of contract claim. *See* 28 U.S.C. § 1491(a)(1).

**Trial**

Mr. Stephens is a team leader at the Office for Civil Rights in Dallas. He has been Ms. Patterson's supervisor since October 2003, when she was transferred to his team. Mr. Stephens received Ms. Patterson's emails in August and September of 2004, containing inquiries about a possible promotion; he did not respond in writing. His understanding was that the Collective Bargaining Agreement required him to give a written response to an employee only if his decision was not to promote. He did not believe he had violated the provision, because he did plan to promote Ms. Patterson at the time, and he was developing a promotion recommendation. He submitted his recommendation on November 18, 2004.

Mr. August is the regional director at the Dallas Office for Civil Rights.  He did not approve Ms. Patterson's promotion after Mr. Stephens' November recommendation.  Mr. August testified that he had firsthand knowledge of one of the complex cases on which Mr. Stephens' recommendation was based, Wichita Falls.[4]  Mr. August did not believe that plaintiff had

---

[4]Mr. Stephens did not supervise Ms. Patterson on the Wichita Falls case; she was working under her previous supervisor, Mr. Blanchard, at the time.  Mr. Stephens based his inclusion of the Wichita Falls case in his recommendation primarily upon a memorandum written by Mr. Blanchard.

performed enough independent work in that case to receive credit towards promotion; instead, the attorney on the case was the person providing leadership.

Mr. Stephens submitted a follow-up recommendation in March 2005. He included in that recommendation additional complex cases that Ms. Patterson had completed since the first evaluation, as evidence of her readiness for Grade 12. Mr. Stephens testified that he understood Ms. Patterson's goal of being promoted to Grade 12, and it was clear that he sympathized with her efforts. Mr. Stephens was committed to assigning, and he did assign, appropriate levels of work to Ms. Patterson so she could demonstrate her readiness for such a promotion.

Mr. Stephens explained that an employee can demonstrate her ability to perform at a Grade 12 level with as few as two complex cases, but in some instances the completion of additional complex cases may be necessary for an employee to display the requisite skills. Not all complex cases are alike in their opportunities for an investigator to show that she has the skills necessary for promotion to the next level.

Mr. Blanchard's testimony corroborated this understanding of the "two or more different complex cases" requirement. Mr. Blanchard was a team leader in the Dallas Office of Civil Rights, and served as Ms. Patterson's supervisor from January through October 2003. He is now the regional director in the New York Office of Civil Rights. Mr. Blanchard had provided Ms. Patterson with the memorandum setting out a requirement that she complete two or more complex cases after she expressed interest in demonstrating her ability for promotion to Grade 12.

Mr. Blanchard testified that he prepared the memorandum years before his supervision of Ms. Patterson. He issued it as a general guideline for employees under his supervision. He explained that the memo was based on the Grade 12 position description, and that he tried to provide real-life examples of how employees could demonstrate the requisite ability. "Two or more cases" to Mr. Blanchard means "at least two cases."

Mr. Blanchard told the court that cases require different levels of policy identification, complexity of facts, and legal application; the number of complex cases that an employee completes before promotion depends upon the content of the cases completed. Standard operating procedures also require that a supervisor provide interim ratings in situations such as Ms. Patterson's. Little mention was made of this policy during trial, but Mr. Blanchard testified that he did comply with the rule; he provided an interim rating of Ms. Patterson's work when he departed as her supervisor.

## Breach

Plaintiff argued that the Government breached standard operating procedures in two ways. The first was defendant's failure to explain the status of Ms. Patterson's promotion in writing within thirty days of her inquiry. The second alleged breach was the Department's failure to promote Ms. Patterson when she had completed two complex cases and qualified according to her time-in-grade.

6

### 1. Failure to Explain Status

Plaintiff contended that the Government was obligated by standards and procedures to notify her in writing of any decision made regarding her promotion to Grade 12.  She cited the Collective Bargaining Agreement in support of this argument:

> If an employee has completed time-in-grade and qualifications requirements for a career ladder promotion, and the supervisor has not initiated action . . . [on the promotion] the employee may request a determination from the supervisor as to whether the supervisor is prepared to recommend promotion. The supervisor will inform the employee within thirty (30) calendar days after the employee has requested a determination of the action he/she intends to take.
>
> (a) If the determination is to recommend a promotion, the supervisor shall promptly initiate the written certification required in Section 18.04(c) of this Article.
>
> (b) If the determination is not to recommend a promotion, the supervisor will promptly communicate to the employee the reasons for non-promotion. If the employee requests, the reasons will be provided in writing. The employee may thereafter request a redetermination from the supervisor at 4-month intervals.

CBA § 18.05.

Mr. Stephens testified that he did not respond in writing to Ms. Patterson's inquiry because his determination had been to promote her.  It was not he, but Mr. August, who decided against the promotion. Mr. Stephens did not believe any written communication was required in this circumstance.  The provision requires that the supervisor "inform the employee . . . of the action he intends to take," but it only requires a *written* response where "the determination is not to recommend a promotion."[5]  He testified that while he did not respond in writing, he did meet with Ms. Patterson regarding her promotion and he worked on his recommendation.

### 2. Two Complex Cases

The second alleged breach was the Department's failure to promote Ms. Patterson when she had completed two complex cases and qualified according to her time-in-grade.  The Collective Bargaining Agreement provides that employees in career ladder positions will be promoted to the next higher grade level when:

. . . .

---

[5] While it could be argued that Mr. August was the "supervisor" for the purposes of this decision and not Mr. Stephens; and generally the interpretation of the CBA in this application may seem strained, plaintiff did not raise these questions.  In any event, we did not doubt Mr. Stephens' credibility or sincerity on these points.  He genuinely wanted to help Ms. Patterson advance.

(b)  The employee has met the necessary time-in-grade and qualifications requirements;

(c) The first line supervisor provides written certification that:

(1) The employee is performing at least at a Fully Successful level, has not received less than a "Fully Successful" rating on a critical element that is also critical to the performance at the next higher grade, and has demonstrated the ability and readiness to perform at the next higher level; and

(2) There is enough work in the unit at the next performance level for the employee to be promoted, and there is a continuing need for personnel at that grade level.

(d)  Approvals and authorizations shall normally be provided, or disapprovals given, by the principal office within fifteen (15) work days of the supervisor's written certification.

. . . .

(f) While the Employer may not deny or delay a promotion for arbitrary or capricious reasons, operational circumstances reasonably related to the promotion or position may delay or preclude the promotion of employees who otherwise meet the eligibility requirements. . . .

CBA § 18.04.

A Personnel Manual Instruction provides additional information regarding advancement to full performance levels at PMI 335-1VII.  The Instruction includes the following caveat:

Although advancement to the full performance level is the intent and expectation of the career ladder system, promotions within career ladders are neither automatic nor mandatory.  There is no guarantee that an employee in a career ladder will be promoted, nor a commitment that a promotion will be made at a set time.

PMI 335-1VII.(B)(1)(a).

The requirement that Ms. Patterson and others complete two or more complex cases is a guideline that was contained originally in a memorandum issued by Mr. Blanchard to his staff. It represents a determination by supervisors that a Grade 11 employee can demonstrate the ability to perform at a Grade 12 level after experiencing two substantial cases, but it could take experience with more cases before the necessary skill set becomes evident.  Supervisors are authorized to exercise discretion in deciding when an employee has "demonstrated the ability and readiness to perform at the next higher level; and [they] may not deny or delay a promotion for arbitrary or capricious reasons."  CBA § 18.04.  Mr. Stephens and Mr. August had discretion in choosing whom to promote. Their authority came from the standard operating procedures at issue in this case: the Collective Bargaining Agreement and the Personnel Manual Instruction.

Mr. Stephens recommended Ms. Patterson for promotion within several months of her initial inquiry, but his recommendation was rejected by the regional director. We cannot agree with Ms. Patterson that she would have been promoted but for Mr. Stephens' failure to contact her in writing. Even if plaintiff had shown that Mr. Stephens neglected a required notification, she could not show how such inaction prejudiced her.

The Personnel Manual does not guarantee promotions at set times; standard operating procedures do not authorize supervisors to guarantee promotions. *See* PMI 335-1(b)(1)(A) ("There is no guarantee that an employee in a career ladder will be promoted, nor a commitment that a promotion will be made at a set time.").

## CONCLUSION

Defendant was not required to promote Ms. Patterson from GS-11 to GS-12 upon the completion of two complex cases. Mr. August did not approve her promotion when it was first recommended because he had observed her work on the Wichita Falls case. He did not think Ms. Patterson deserved credit for performing independent work on that case. We cannot say that Mr. August's decision was arbitrary or capricious in the circumstances.

This breach of contract case does not assess punitive damages, but attempts to make plaintiff whole if appropriate. Ms. Patterson had to show not only that defendant broke its promise to follow standard operating procedures, but also that such failures caused her damages that a court can quantify. If the Government had omitted proper notification to Ms. Patterson regarding her promotion, we could not have awarded her damages; such a ruling would have been speculative. Ms. Patterson did not show that she was harmed or prejudiced by alleged government contract violations.

Plaintiff's presentation of facts at trial did not establish that defendant breached the terms of its settlement agreement. If defendant had violated terms of its contract with Ms. Patterson, she did not show, and probably could not have shown that the violations caused her monetary damages. The Clerk of Court will dismiss plaintiff's Complaint. No costs.

s/Robert H. Hodges, Jr.
Robert H. Hodges, Jr.
Judge